# COURT OF APPEALS OF VIRGINIA

## Record No. 1533-25-3

TEONA SEQOUYA ROSE
v.
COMMONWEALTH OF VIRGINIA

Present: Chief Judge Decker, Judges Raphael and White

Argued at Lexington, Virginia

Opinion Issued June 30, 2026[*]

### FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
J. Frederick Watson, Judge

Dennis Englerth (Beacon Law, PLLC, on brief), for appellant.

J. Brady Hess, Assistant Attorney General (Jason S. Miyares,[1] Attorney General, on brief), for appellee.

### MEMORANDUM OPINION BY
### JUDGE STUART A. RAPHAEL

Virginia punishes disorderly conduct in public places as a Class 1 misdemeanor. Code § 18.2-415(E). But the statute excludes from criminal liability "the utterance or display of any words or . . . conduct otherwise made punishable under" another provision of Title 18.2 of the Code of Virginia. Code § 18.2-415(B). Applying that "other-crimes proviso," we reversed the disorderly conduct conviction in *Battle v. Commonwealth*, 50 Va. App. 135 (2007), because the defendant's cursing there could have been punished as "fighting words" under Code § 18.2-416, and his taking a swing at the victim could have been punished as assault under Code § 18.2-57. *See Battle*, 50 Va. App. at 141.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

Teona Seqouya Rose appeals her disorderly conduct conviction, arguing that her threatening and verbally abusing the victim could likewise have resulted in convictions for assault and for fighting words. Although the Commonwealth argues that Rose defaulted her fighting-words argument, we agree with Rose that all the conduct supporting her disorderly conduct conviction could have resulted in her being found guilty beyond a reasonable doubt of assault. Applying the other-crimes proviso, we thus reverse the conviction and dismiss the warrant.

BACKGROUND

We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). In doing so, we discard any evidence that conflicts with the Commonwealth's evidence and regard as true all credible evidence favorable to the Commonwealth and all inferences that may fairly be drawn from that evidence. *Cady*, 300 Va. at 329.

On New Year's Eve in 2024, Ebony Jones was driving to a vape shop with her 12-year-old son in the back seat when she noticed a black truck following her. Rose was in the truck. When Jones arrived in the parking lot, Rose hopped out and approached Jones's driver's side window. Jones recognized Rose, explaining at trial that "this is all over a guy that [Rose] . . . used to date," a "man that [they had] both been interested in."

Rose yelled at Jones, threatening to beat her, demanding that she get out of the car, and challenging her to a fight. Wearing Timberland boots, Rose kicked Jones's car "a few times," hard enough to leave scratch marks.[2] Jones felt threatened and bullied. Her son was crying and

---

[2] Jones sometimes referred to her own vehicle as a "car" and sometimes as a "truck."

- 2 -

"scared to death." Jones stayed in the car and drove away. As she did so, Rose kicked it twice more.

The magistrate issued a warrant charging Rose with simple assault under Code § 18.2-57, but the general district court convicted her of disorderly conduct under Code § 18.2-415. At a trial de novo in the circuit court, Rose moved to strike the disorderly conduct charge, arguing that she could not be convicted of disorderly conduct under the other-crimes proviso in Code § 18.2-415(B). Rose reasoned that she "could have been found guilty beyond a reasonable doubt of assault at least." The motion was denied. Rose declined to put on evidence but renewed her argument that the other-crimes proviso barred the claim. The trial court found Rose guilty of disorderly conduct. The court sentenced her to 30 days in jail, all suspended, and ordered that she have no contact with Jones. Rose noted a timely appeal.

ANALYSIS

A person is "guilty of disorderly conduct if, with the intent to cause public inconvenience, annoyance, or alarm, or recklessly creating a risk thereof," she "engages in conduct having a direct tendency to cause acts of violence by the person . . . at whom, individually, such conduct is directed" while "in a public place." Code § 18.2-415(A)(1). But under what we have called "the other-crimes proviso," *Battle*, 50 Va. App. at 140, "[t]he conduct prohibited under subsection A shall not be deemed to include the utterance or display of any words or to include conduct otherwise made punishable under this title," Code § 18.2-415(B). As we said in *Battle*, the other-crimes "proviso only applies when a rational factfinder could find the defendant guilty beyond a reasonable doubt for a Title 18.2 crime." 50 Va. App. at 140.

In *Battle*, an off-duty police officer observed Battle arguing loudly with his friends after they were escorted from a nightclub. The officer saw Battle "make a 'striking motion toward another individual.'" *Id.* at 137. When the officer directed Battle to leave the sidewalk area,

- 3 -

Battle cursed him "so loudly that spit came out of his mouth." *Id.* When Battle persisted, the officer arrested him for disorderly conduct. *Id.* We reversed the conviction and dismissed the warrant. *Id.* at 142. We found that the disorderly conduct conviction could not be based on Battle's assaulting the victim "because that action could be punishable under Code § 18.2-57." *Id.* at 141. Nor could the conviction be based on his "cursing at [the officer] because that could only be punished, if at all, as fighting words under Code § 18.2-416." *Id.*[3]

Rose claims that *Battle* controls the outcome here. She argues that her cursing the victim—demanding she fight and threatening to beat her—was punishable as fighting words. She says that the cursing qualified as "violent abusive language . . . under circumstances reasonably calculated to provoke a breach of the peace." Code § 18.2-416. And she argues that her menacing conduct at Jones's window could have been punished as assault under Code § 18.2-57.

The Commonwealth counters that Rose waived her fighting-words argument under Rule 5A:18 because she did not clearly raise it at trial. The transcript is riddled with gaps where the court reporter noted that what she heard was "incomprehensible." Rose's counsel at one point cited Code § 18.2-416 (the fighting-words statute) as part of his argument about the other-crimes proviso. But the Commonwealth maintains that the transcript fails to show that Rose articulated the argument with sufficient clarity to preserve it. *See, e.g.*, *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019) ("Specificity and timeliness undergird the contemporaneous-objection rule . . . . 'Not just any objection will do. It must be both *specific* and *timely*—so that the trial judge would know the particular point being made in time to do something about it.'" (quoting *Dickerson v.*

---

[3] Although there is no factual parallel here, we also found that Battle's refusal to obey the officer "could have been punished under Code § 18.2-404, which specifically criminalizes the refusal by someone obstructing the 'free passage' of others coming and going from a public place to 'move on when requested to do so' by a law enforcement officer." *Battle*, 50 Va. App. at 141.

*Commonwealth*, 58 Va. App. 351, 356 (2011))). The Commonwealth adds that it was Rose's obligation to ensure an adequate record on appeal. *See* Rule 5A:8(b)(4)(ii). It says that Rose cannot excuse her failure to preserve the argument based on the poor quality of the transcript. *Cf. Dixon v. Dixon*, 71 Va. App. 709, 716 (2020) (declining to reach appellant's claim where "the transcript provided on appeal is only partial").

Rose responds that her counsel's lone reference to the fighting-words statute was enough to preserve the objection. As a fallback, she argues that the trier of fact could have found her guilty of simple assault alone, considering all the conduct that supported the disorderly conduct conviction. We agree with Rose's fallback argument and therefore decline to reach whether the trial transcript shows that she adequately preserved her fighting-words argument.

The other-crimes proviso applies only when the disorderly conduct at issue "was comprised *solely* of conduct 'otherwise made punishable under this title.'" *Battle*, 50 Va. App. at 141 (quoting Code § 18.2-415(B)). For instance, in *Tokora-Mansary v. Commonwealth*, No. 2494-08-4, 2009 Va. App. LEXIS 586 (Dec. 29, 2009), we found the proviso inapplicable when a portion of the asserted disorderly conduct involved the defendant's refusal to obey the directions of a sheriff's deputy.[4] The defendant argued that she could have been found guilty of violating Code § 18.2-464, "which punishes refusal or neglect to obey a conservator of the peace." *Id.*, slip op. at 9, 2009 Va. App. LEXIS 586, at \*14. But we disagreed, noting that "law enforcement officers are not listed as conservators of the peace in that statute." *Id.*, 2009 Va. App. LEXIS 586, at \*14-15. Thus, the other other-crimes proviso did not apply because the "disorderly conduct was not 'comprised *solely* of conduct "otherwise made punishable"'" under Title 18.2." *Id.*, 2009 Va. App. LEXIS 586, at \*15 (quoting *Battle*, 50 Va. App. at 141).

---

[4] We consider the unpublished disposition in *Tokora-Mansary* for its persuasive value. *See* Rule 5A:1(f).

In this case, by contrast, Rose could have been found guilty beyond a reasonable doubt of simple assault under Code § 18.2-57(A) based solely on the same conduct for which Rose was convicted of disorderly conduct. An assault "occurs when an assailant," among other things, "engages in an overt act intended to place the victim in fear or apprehension of bodily harm and creates such reasonable fear or apprehension in the victim." *Carter v. Commonwealth*, 269 Va. 44, 47 (2005). Rose's conduct fit that definition. She kicked Jones's car and angrily harassed her outside the window. Jones testified that she felt threatened and bullied. Rose was so menacing that Jones's 12-year-old son cowered and cried in the back seat, "scared to death."

The threatening words used by Rose were integral to the assaultive conduct. As Rose kicked the door with her boots, she shouted, "I'm gonna beat yo ass, get the fuck out the car, bitch. I'm gonna beat yo ass. I want my ones. Get the fuck out the car." Jones understood the slang expression, "I want my ones," to mean that Rose wanted to fight her in the street.

Those verbal threats were on par with the menacing words that the Supreme Court found sufficient to support an assault conviction in *Clark v. Commonwealth*, 279 Va. 636 (2010). The defendant in *Clark* followed a school bus driver, twice approaching the open door and verbally abusing her. The defendant shouted, "I told you I'm going to get you, bitch, . . . I don't care where you at, . . . if you're in the school, or you're in the grocery store [I'm going to] [f]uck you up." *Id.* at 639 (third and fourth alterations in original). She shouted another time, "Bitch, like I say, I'm going to get you." *Id.* at 639. The Court explained that because "assault requires an overt act, words alone are never sufficient to constitute an assault." *Id.* at 641. But "[w]ords and prior conduct are highly relevant in shedding light on intent and the context within which certain actions transpired. A perpetrator's intent may be inferred from the nature of the overt act and the surrounding circumstances." *Id.* at 642. The defendant's repeated acts of following the school bus, appearing outside the open door, and "threaten[ing] to harm [the bus driver] anywhere she

- 6 -

could be found" sufficed to show "an overt act intended to place [the bus driver] in fear or apprehension of bodily harm." *Id.* at 642-43. As in *Clark*, Rose's verbal threats to Jones were likewise integral to showing (1) her intent to place Jones "in fear or apprehension of bodily harm," and (2) that Rose's conduct "create[d] . . . reasonable fear or apprehension in the victim." *Carter*, 269 Va. at 47.

## CONCLUSION

In short, because Rose could have been found guilty beyond a reasonable doubt of assault under Code § 18.2-57, the other-crimes proviso in Code § 18.2-415(B) prevents her from being convicted of disorderly conduct.

*Reversed and warrant dismissed.*